IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| OTIS R. RANSAW and VERONICA RANSAW, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 2:16-cv-147-MHT-GMB |
| UNITED SERVICES AUTOMOBILE ASSOCIATION and UNITED SERVICES AUTOMOBILE ASSOCIATION FEDERAL SAVINGS BANK, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 3. Plaintiffs Otis R. Ransaw ("Mr. Ransaw") and Veronica Ransaw ("Mrs. Ransaw"), proceeding *pro se*, filed this action on March 3, 2016, asserting a variety of claims in connection with the denial of homeowners' insurance coverage for water damage to their home. Doc. 19. Now before the court is the Motion for Summary Judgment filed by Defendants United Services Automobile Association ("USAA") and United Services Automobile Association Federal Savings Bank ("USAA FSB"). Doc. 21.

After careful consideration of the parties' submissions, the applicable case law, and the record as a whole, the undersigned RECOMMENDS that the Motion for Summary

Judgment (Doc. 21) be GRANTED, and that Plaintiffs' federal claims be DISMISSED with prejudice. The undersigned further RECOMMENDS that the District Court decline to exercise supplemental jurisdiction over the remaining state-law claims.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the federal claim in this action pursuant to 42 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* (internal quotation marks omitted). If

the nonmovant's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249−50 (1986) (citations omitted). "However, disagreement between the parties is not significant unless the disagreement presents a genuine [dispute] of material fact." *Gamble v. Pinnoak Resources, LLC*, 511 F. Supp. 2d 1111, 1122 (N.D. Ala. 2007) (internal quotation marks omitted). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a district court considers a motion for summary judgment, all evidence and inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). "The court must avoid weighing conflicting evidence or making credibility determinations. Instead, the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Gamble*, 511 F. Supp. 2d at 1122 (internal quotation marks omitted). "Where a reasonable fact finder may draw more than one inference from the facts, then the court should refuse to grant summary judgment." *Id.* (internal quotation marks omitted).

### III. STATEMENT OF FACTS

Mr. Ransaw and Mrs. Ransaw (collectively, "the Ransaws") are married and live together in Montgomery, Alabama. Doc. 22-2 at 3. They are both veterans of the military and are currently employed by Primerica Financial Services as insurance agents. Docs. 22-1 at 5 & 22-2 at 5–6. On August 22, 2013, the Ransaws purchased a homeowner's insurance policy from USAA covering their home in Montgomery. Doc. 19 at 2. On

3

January 29, 2014, Mr. Ransaw informed USAA that a waterline in the home broke, causing water damage. Docs. 22-3 at 3 & 22-1 at 7. USAA responded to the claim on February 3, and Mr. Ransaw sought estimates for repairs to the leaking waterline over the course of the following weeks. Doc. 22-3 at 3. On February 12, Mr. Ransaw contacted Darnell Plumbing for an estimate. Doc. 22-4 at 2. Soon thereafter, Darnell Plumbing sent an employee to the Ransaws' home to inspect the leaking pipe. Doc. 22-4 at 2. Sharon Helms, a Darnell Plumbing employee, emailed Mr. Ransaw on February 18, 2014 with two price estimates for the repairs. Doc. 22-4 at 2–3. The first estimate was to repair the waterline with copper pipe for a total cost of $2,139.52. Doc. 22-4 at 3. The second estimate was to repair the waterline "by running copper water line overhead" at a cost of $1,064.85. Doc. 22-4 at 3.

Two days later, on February 20, Mr. Ransaw emailed Helms with "updates" to the Darnell Plumbing estimate that increased the cost of repair to $6,739.52. Doc. 22-4 at 3. Mr. Ransaw stated that he had made "adjustments" to the price quotations in Helms' email to reflect what he believed to be the actual cost and scope of the repairs. Doc. 22-1 at 21. Mr. Ransaw had also changed the word "line" to the plural "lines" to reflect his belief that multiple waterlines needed to be repaired. Doc. 22-1 at 22. Helms emailed Mr. Ransaw the next day and stated that his modifications did not reflect Darnell Plumbing's actual estimate and asked Mr. Ransaw to refrain from submitting the altered estimate to USAA. Doc. 22-4 at 3. Nevertheless, on February 20, Mr. Ransaw sent the estimate to USAA with the altered repair costs included. Doc. 22-3 at 3. On February 21, Leesa Tomsett, a claims adjustor with USAA, called Mr. Ransaw to discuss the Darnell Plumbing estimate. Doc. 22-3 at 3. During the call, Mr. Ransaw did not inform Tomsett that he had changed the

estimate from $2,139.52 to $6,739.52. The same day, Helms communicated with Tomsett and informed her that the $6,739.52 estimate was altered by Mr. Ransaw and that the correct estimate was $2,139.52. Doc. 22-3 at 3–4. The claim was then referred to USAA's special investigation unit ("SIU"). Doc. 22-3 at 4.

On February 25, 2014, USAA hired Crawford and Company, a property appraisal company, to perform an inspection of the Ransaws' home. Doc. 22-3 at 4. Josh Sanderson performed the inspection and determined that the cost of the damage to the waterline was $2,328.56, roughly $200 more than Darnell's estimate and $4,400 less than the altered estimate Mr. Ransaw sent to USAA. Doc. 22-3 at 4. On February 27, Ryan Sigler, an SIU investigator, conducted a recorded interview with Mr. Ransaw during which Mr. Ransaw admitted to altering the estimate due to his belief that Darnell Plumbing had underestimated the price and scope of the work. Doc. 22-3 at 4. On March 6, 2014, USAA denied Mr. Ransaw's property damage claim because of what it characterized as his misrepresentations during the claim-submission process. Doc. 22-3 at 4–5. On April 28, USAA FSB informed the Ransaws that it was closing the credit card account they opened in February of 2000 due to "unacceptable behavior or activity." Doc. 22-5 at 3.

On January 29, 2016, the Ransaws filed suit in the Circuit Court of Montgomery County, Alabama against USAA and USAA FSB, asserting a number of claims under state and federal law. Doc. 1-1. The federal claims were brought under the Fair Credit Reporting Act, the Credit Card Accountability Responsibility and Disclosure Act of 2009, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Equal Credit Opportunity Act. Doc. 19 at 8–9. On March 3, 2016, USAA and USAA FSB removed the case to this

5

court, asserting that this court has subject-matter jurisdiction based on the Ransaws' claim under the Fair Credit Reporting Act. The Ransaws did not file a motion to remand the case to state court. On May 20, 2016, they filed an amended complaint that is now their operative pleading. Doc. 19.

## IV. DISCUSSION

### A. Fair Credit Reporting Act

The Ransaws assert a claim under the Fair Credit Reporting Act ("FCRA") for the termination of "the rights and authorization" of their USAA credit card account. Doc. 19 at 8–9. The Ransaws contend that Mrs. Ransaw had a right to "view her credit file upon request under the FCRA," as well as "the right to dispute inaccurate information under FCRA, in which [sic] the Defendant 'USAA' is to promptly investigate into the matter which was not done for [Mrs. Ransaw] in this case." Doc. 19 at 8. Defendants argue that the Ransaws' have failed to assert a cognizable claim under the FCRA and that this claim necessarily fails as a matter of law. The court agrees, and concludes that summary judgment on this claim is due to be granted in Defendants' favor.

"The FCRA endeavors to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy . . . by, among other things, compelling merchants to adopt procedures to safeguard consumers' credit information." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also* 15 U.S.C. § 1681(b). The statute is "intended to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F.

Supp. 2d 1320, 1328 (S.D. Fla. 2011). Thus, it compels a "consumer reporting agency" to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The statute also contains an enforcement mechanism allowing consumers to sue for willful violations of its terms. 15 U.S.C. § 1681n(a); *Harris*, 564 F.3d at 1306. "[T]he FCRA does not provide for a right of action against a furnisher of false information," but rather imposes certain duties upon a furnisher of false information after it receives notice that the information is in dispute. *Gens v. Wachovia Mortg. Corp.*, 2011 WL 9121, at *8 (N.D. Cal. Jan. 3, 2011).

The Ransaws have neither alleged nor introduced competent evidence of a cognizable claim under the FCRA. At the outset, the Ransaws' complaint does not specify which of the FCRA's provisions they are invoking. Moreover, the Ransaws pleaded no facts that could feasibly give rise to an FCRA claim, and have not offered any path to enforcement under the FCRA's framework. In essence, the Ransaws contend that Mr. Ransaw did not intend to deceive USAA by altering the repair estimate contained in Helms' email, and instead altered the estimate to expedite the claims process and reflect what he believed would be the accurate cost of repairs. Therefore, they claim that the credit card was terminated wrongfully and without just cause.[1] The FCRA claim, arising purely out of the cancelation of the credit card, vaguely alleges that there was "inaccurate

---

[1] The record reflects that USAA FSB informed the Ransaws in an April 28, 2014 letter that it was closing the credit card account due to "unacceptable behavior and activity." Doc. 22-5 at 3. The credit card agreement between the Ransaws and USAA FSB provided that USAA FSB may "close or suspend an Account at any time without prior notice." Doc. 22-5 at 22.

7

information" in the "credit file" which USAA FSB did not "promptly investigate." Doc. 9 at 36. However, even assuming Defendants could be subject to FCRA liability, Plaintiffs have not alleged what information was produced, how it was inaccurate, and how Defendants failed to follow the FCRA's procedures. Moreover—and more to the point at this stage of the litigation—the Ransaws have not directed the court to any competent evidence supporting even their poorly-sketched allegations under the FCRA. *See generally* Doc. 26. Accordingly, the Ransaws' FCRA claim cannot withstand Defendants' summary-judgment motion.

**B.     Remaining Federal Claims**

In a portion of their Amended Complaint entitled "Nexus," the Ransaws ostensibly assert three additional federal claims for violations of the Credit Card Accountability Responsibility and Disclosure Act of 2009, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Equal Credit Opportunity Act. *See* Doc. 19 at 9. As the Ransaws are proceeding *pro se*, the court is under a duty to interpret their complaint liberally, and for that reason will construe these allegations as asserting three separate federal claims. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, much like the FCRA claim, the remaining federal claims are based on woefully insufficient factual allegations and are unsupported by any evidence in the record.

   *1.     Credit Card Accountability Responsibility and Disclosure Act of 2009*

Congress enacted the Credit Card Accountability Responsibility and Disclosure Act of 2009 (the "Credit CARD Act") in May of 2009 to amend the Truth in Lending Act, which "promote[d] consumers' informed use of credit by requiring meaningful disclosure

of credit terms." *Dieffenbach v. RBS Citizens, N.A.*, 2012 WL 1605095, at *4 (E.D. Pa. May 8, 2012) (citing *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011)) (internal quotation marks omitted). The Credit CARD Act sets out requirements establishing "fair and transparent policies pertaining to open-end consumer credit plans, including credit card accounts." *Id.* (citation and internal quotation marks omitted). For instance, the Credit CARD Act requires a lender to provide advance notice in the event of "significant changes" such as an increase in the card's interest rate, fees, or finance charges. *See* 15 U.S.C. § 1367(i). "The examples of what constitutes a 'significant change' in the statute . . . do not include closure of the cardholder's account." *Dieffenbach*, 2012 WL 1605095, at *5. Indeed, the implementing regulations reveal that "significant changes" include changes in interest rates, fees, and required payments, but not closure of an account. *See* 12 C.F.R. §§ 226.9(c)(2)(ii) ("[A] 'significant change in account terms' means a change to a term required to be disclosed under § 226.6(b)(1) and (b)(2), an increase in the required minimum periodic payment, a change to a term required to be disclosed under § 226.6(b)(4), or the acquisition of a security interest."); 226.6(b)(1), (b)(2), & (b)(4).

The Ransaws merely allege that USAA FSB failed to disclose "the terms of termination of rights and authorization" of their credit card account, as well as "the reason for the termination of" the Ransaws' credit card account. Doc. 19 at 9. Neither contention, even if true, would state a claim for relief under the Credit CARD Act, and the Ransaws have offered no evidence in support of these allegations. Moreover, both allegations are contradicted by undisputed evidence in the record that the Ransaws were mailed a copy of the credit card agreement by USAA FSB, that the agreement provided that USAA FSB had

9

the right to close the account at any time, and that USAA FSB provided cause for its decision to close the account in the letter it sent to the Ransaws on April 28, 2014. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Doc. 22-5 at 3. Thus, the Ransaws have no viable claim under the Credit CARD Act.

### 2. *Dodd-Frank Wall Street Reform and Consumer Protection Act*

The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") provides statutory protections and a private right of action for whistleblowers who report violations of federal securities laws. *See* 15 U.S.C. § 78u-6(h)(1)(B). "[T]he plain language of the Dodd-Frank whistleblower-protection provision creates a private cause of action only for individuals who provide information relating to a violation of the securities laws to the SEC." *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013). The Ransaws argue, in essence, that USAA failed to disclose its right to close their credit card account and that it provided no just cause for doing so. They have not introduced evidence that they reported any purported securities violations, nor that they were retaliated against for doing so. This is plainly insufficient to prove a cause of action under Dodd-Frank, and summary judgment is due to be entered in the Defendants' favor on this claim.

### 3. *Equal Credit Opportunity Act*

The Equal Credit Opportunity Act ("ECOA") "prohibits discrimination against an applicant for credit based on 'race, color, religion, national origin, sex or marital status, or

age' and gives aggrieved applicants a private right of action to sue '[a]ny creditor who fails to comply with any requirement imposed under [ECOA].'" *Cannon v. Sec., U.S. Dep't of Agric.*, 649 F. App'x 892, 894 (11th Cir. 2016) (quoting 15 U.S.C. §§ 1691(a) & 1691e(a)). Yet again, the Ransaws have failed to produce evidence supporting a viable ECOA claim, as they have not proven, or even alleged in their complaint, that USAA FSB discriminated against them on the basis of a protected trait. Thus, summary judgment should be granted in favor of Defendants on any purported ECOA claim. *See Diaz-Verson v. Bank of Am., N.A.*, 159 F. App'x 71, 73 (11th Cir. 2005) (finding an ECOA claim to be "frivolous" where the "closest the complaint comes to alleging discrimination on the basis of any of these protected categories is the allegation . . . that the 'Plaintiff Diaz-Verson, Jr., was born in Cuba and is now a naturalized American citizen.'").

Presented with the opportunity to produce evidence of a valid federal claim in response to the instant summary-judgment motion, the Ransaws have failed to do so. In fact, they did not explicitly address any of the federal claims in their response. *See generally* Doc. 26. Thus, the court is left to piece together a claim under any of the various statutes referenced by the Ransaws from both woefully insufficient factual allegations and a dearth of any evidence in support of those allegations. Of course, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *see also* Fed. R. Civ. P. 56(c)(1). Therefore, the court recommends granting the Defendants' motion for summary judgment on all of the Ransaws' claims under federal law.

## C. State-Law Claims

The Ransaws alleged the following causes of action under state law: two counts of breach of contract, two counts of bad-faith handling of their insurance claim, fraud, conversion, negligence, wantonness, tortious interference with a contract, and unjust enrichment. Doc. 19. Pursuant to 28 U.S.C. § 1367(c)(3), the undersigned recommends that the District Court decline to exercise supplemental jurisdiction over the Ransaws' state-law claims because the court recommends summary disposition of the Ransaws' claims arising under federal law. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction"). In fact, where all federal claims are dismissed prior to trial, district courts are "encouraged" to dismiss any remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Before dismissing the remaining state-law claims, the court must consider judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

"Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only

do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. In this vein, the Supreme Court has declared that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The court finds no basis for departing from this rule of thumb by adjudicating the Ransaws' many state-law claims if their federal claims are dismissed prior to trial. Further, there is nothing before the court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining subject-matter jurisdiction. There is no apparent inconvenience inherent in continuing this litigation in the forum chosen by the Ransaws. Moreover, the court can discern no significant possibility of prejudice to any party, particularly to the extent 28 U.S.C. § 1367(d)'s tolling provision applies to the remaining state-law claims. Accordingly, the court recommends that, if the Ransaws' federal claims are dismissed, the District Court decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to § 1367(c)(3).

## V. CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS that the motion for summary judgment (Doc. 21) be GRANTED, and that Plaintiffs' federal claims be DISMISSED with prejudice. The undersigned further RECOMMENDS that the District Court decline to exercise supplemental jurisdiction over the remaining state-law claims.

It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than June 6, 2017**. Any objections filed must

specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 23rd day of May, 2017.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE